376 So.2d 250 (1979)
Debra F. WALSH, Appellant,
v.
WOMEN'S HEALTH CENTER, INC., Appellee.
No. 78-1554/NT 4-25.
District Court of Appeal of Florida, Fifth District.
September 19, 1979.
Larry Sands, Daytona Beach, for appellant.
Karen L. Goldsmith and Howard R. Marsee of Pitts, Eubanks & Ross, P.A., Orlando, for appellee.
WARREN, LAMAR, Associate Judge.
This appeal by plaintiff is from the dismissal of her complaint for breach of contract *251 and negligence in the performance of a surgical abortion against a private corporation engaged in performing surgical abortions.
The defendant, appellee here, moved to dismiss the complaint for failure to allege that the plaintiff had theretofore submitted her claim to a medical liability mediation panel as required by Section 768.44, Florida Statutes (1977). The trial judge found that the defendant was an entity intended to be covered within the meaning of the section and granted the motion.
Under Section 768.44(1)(a), Florida Statutes (1977) the persons or entities entitled to mediation are limited to "any medical or osteopathic physician, podiatrist, hospital, or health maintenance organization." Since plaintiff's action obviously was not brought against a medical or osteopathic physician or a podiatrist, she contends that the defendant is not included in the terms "hospital" or "health maintenance organization." In support she points to the definitions of hospital and health maintenance organization in Section 768.54(1)(d), Florida Statutes (1977).
Defendant's position is that it is a health maintenance organization under the section and thus is entitled to a medical mediation prior to the institution of any civil action; it does not argue that it is a hospital.
The statute has been strictly construed in Morales v. Moore, 356 So.2d 829 (Fla. 4th DCA 1978) and in Young v. Bramlett, 369 So.2d 652 (Fla. 1st DCA 1979).
Because a health maintenance organization is not defined in Section 768.44, Florida Statutes (1977), it becomes necessary to search for a definition and we first turn to Section 768.54. Although this section appears to limit its definitions to "this section," nevertheless, the definitions therein are helpful in discovering the legislative intent. 30 Fla.Jur., Statutes, § 113. In subsection (e) therein reference is made for the meaning of the term to part II of Chapter 641.
In § 641.19(2), Florida Statutes (1977) it is found that "`Health maintenance organization' means any organization authorized under this part which: (a) Provides, either directly or through arrangements with others, health care services to persons enrolled with such organizations, on a prepaid per capita or prepaid aggregate fixed sum basis; (b) Provides, either directly or through arrangements with other persons, corporations, institutions, associations, or entities, those health care services which subscribers might reasonably require in order to be maintained in good health; (c) Provides physician services directly through physicians who are either employees or partners of such organization or under arrangements with a physician or any group of physicians."
Section 641.20, Florida Statutes (1977) provides for a certificate of authority to an entity qualified under the provisions of this part. The parties indicated that the defendant was not an organization certified under part II of Chapter 641.
In Huff v. St. Joseph's Mercy Hospital of Dubuque Corp., 261 N.W.2d 695 (Iowa 1978), the court faced the task of construing the defendant-hospital's prepaid obstetrical contract offered to its patients in the light of the commissioner of insurance's assertion that the contract was in reality a health maintenance organization plan as defined by statute and the defendants were not licensed under that statute. Although the court held that the contract was not to be classified as health maintenance organization, in the course of its opinion it commented that "[t]he combined concern with rising costs of health care and lack of access by many people to quality health care has generated increased interest in alternative health care systems throughout this country," and added that the health maintenance organization concept was explained in an article appearing in 10 Forum 405. In summary, the court stated the three basic principles involved with the health maintenance organization concept were, i.e., "1) an organizational system wherein health care providers are brought together; 2) a comprehensive basic health care system which emphasizes preventive medicine; 3) a *252 plan of prepaid [insurance] by enrollees is utilized."
An examination of 10 Forum 405, 406, which is a discussion by James E. Ludlam, entitled "Health Maintenance Organizations HMOs: Do They Really Work?", shows the definition of a "HMO" used by the Health Services and Mental Health Administration as: "A Health Maintenance Organization is composed of a group of legally constituted organizations working together on a contractual basis [certain named contractual characteristics]." The author continued by stating, "[t]o put it more simply, an individual on behalf of himself [or as a part of a group plan] contracts in advance with an organization known as an HMO for substantially all of his and his family's health care needs."
In view of these definitions which we apply to the term under discussion in Section 768.44, Florida Statutes (1977), the order of the lower court granting defendant's motion to dismiss is reversed.
REVERSED.
ANSTEAD, HARRY LEE, and MOORE, JOHN H. II, Associate Judges, concur.